Wilben NAPAYONAK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2672.

Court of Appeals of Alaska.

May 18, 1990.

Nancy J. Nolan, and Susan Orlansky, Asst. Public Defenders, and John B. Salemi, Public Defender, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Wilben Napayonak was convicted by a jury of two counts of sexual assault in the first degree, an unclassified felony, AS 11.-41.410(a)(1), and one count of robbery in the first degree, a class A felony, AS 11.-41.500(a)(1). Napayonak received concurrent sentences of thirty years on each of the sexual assault charges and seven and one-half years on the robbery charge. The court also imposed a concurrent one-year sentence for probation revocation based on a previous conviction. Napayonak appeals his robbery conviction arguing that there was insufficient evidence to support the charge against him. He also appeals his sentence as excessive. The state argues that the concurrent one-year sentence for probation revocation is illegal. We affirm

the conviction for robbery but remand the sentence.

On or about March 25, 1987, I.P. and Wilben Napayonak met at the 515 Club in downtown Anchorage. On March 31, I.P. and Napayonak encountered one another at the 515 Club again. Napayonak invited I.P. to come to his home to listen to some music and I.P. accepted. Soon after entering Napayonak's apartment, Napayonak pulled out a knife, held it to I.P.'s neck, and told her to put a pillowcase over her head. I.P. complied and was led by Napayonak to another room where he told her to take off her clothes. Napayonak then sexually assaulted I.P.

After the assault, I.P. was led back into the living room and placed on a chair. Later, still with the pillowcase on her head, I.P. heard the sound of Velcro ripping. I.P. testified that she believed that Napayonak was opening her jacket pocket or her wallet, both of which were lined with Velcro. I.P.'s wallet contained $300.

About a half an hour later, Napayonak led I.P. back into the bedroom where he sexually assaulted her a second time. Afterwards, he threw I.P.'s clothes at her and told her to get dressed. Napayonak led I.P. outside where I.P. took the pillowcase off her head and tried to run away. Napayonak caught her and told her not to look back because he had a gun. I.P. ran to a hotel and called her uncle with whom she was staying in Anchorage. She went to her uncle's home and from there contacted the police and reported the assaults and the missing money from her jacket pocket.

In order to convict a defendant, the state must establish each element of an offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072–73, 25 L.Ed.2d 368 (1970); *Smallwood v. State*, 781 P.2d 1000, 1003 (Alaska App. 1989). Napayonak claims that the state was not able to prove each element of first-degree robbery beyond a reasonable doubt and that although he did not raise this argument at trial, this court should reverse his conviction under the doctrine of plain error.

Robbery in the first degree is defined by AS 11.41.500(a)(1). The statute states in pertinent part:

A person commits the crime of robbery in the first degree if the person violates AS 11.41.510 and, in the course of violating that section ..., that person or another participant

(1) is armed with a deadly weapon or represents by words or other conduct that either that person or another participant is so armed[.]

Alaska Statute 11.41.510(a) provides:

A person commits the crime of robbery in the second degree if, in the course of taking or attempting to take property from the immediate presence and control of another, the person uses or threatens the immediate use of force upon any person with intent to

(1) prevent or overcome resistance to the taking of the property or the retention of the property after taking; or

(2) compel any person to deliver the property or engage in other conduct which might aid in the taking of the property.

■ Napayonak contends that there was no evidence that the knife or any other force was used to obtain the money from I.P.'s jacket. Force is defined as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint or confinement." AS 11.81.900(b)(22). Napayonak points out that Judge Johnstone remarked during the sentencing hearing, "There was no fear of robbery at the time. It was ... [a] form of theft, so to speak. Probably the victim didn't even know the money was being taken at the time."

Based on Judge Johnstone's conclusion, Napayonak argues that I.P. did not realize her money was being taken when she heard the Velcro ripping. He also contends that there is no indication that I.P. was induced to part with her money on account of the knife, since after she had been threatened initially Napayonak did not threaten her with the knife again. Finally, Napayonak suggests that the jacket was not in I.P.'s immediate presence or control since she was not wearing it at the time.

Based on these assertions, Napayonak argues that the elements of first-degree robbery were not satisfied.

Despite Napayonak's interpretation of the evidence, however, reasonable minds could conclude that the elements of first-degree robbery were met. *See Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981). Even assuming that Napayonak is correct that a robbery victim must be aware that the robber is taking the property, the evidence here would be sufficient to support a conviction. Although I.P. was not wearing her jacket at the time of the offense, the jury could have concluded that she was induced to part with it and to permit Napayonak to take money from it by force. Although Napayonak had not renewed his threats to use the knife, I.P.'s face was covered by the pillowcase and she could have conceivably believed that Napayonak was still prepared to use the knife if she tried to resist the taking of her property. In effect, she was "restrained" by the initial show of force. Although she did not see Napayonak remove the money from her jacket, she testified that she heard the Velcro being ripped open. Since she knew her money was in the jacket, it is reasonable to conclude that she was aware that Napayonak was taking her money. *See People v. Turner*, 145 Cal.App.3d 658, 193 Cal.Rptr. 614, 626–27 (1983) (fact that sexual offense precedes robbery does not necessarily indicate that the victim was no longer acting under threat of harm when offender committed the second offense).

When a defendant challenges the sufficiency of the evidence, this court reviews the evidence and the inferences therefrom in the light most favorable to the state and determines whether the relevant evidence could support a conclusion by a reasonable mind that there was no reasonable doubt of guilt. *Dorman*, 622 P.2d at 453; *Beck v. State*, 408 P.2d 996, 997 (Alaska 1965). Because the evidence could support a finding that the elements of first-degree robbery were met in this case, this charge was properly presented to the jury for consideration. We conclude, therefore, that Napayonak's conviction for first-degree robbery

was not plain error and does not require reversal.

■ Napayonak has also challenged his total sentence as excessive. Napayonak had two prior felony convictions so he was sentenced as a third felony offender. The court found that three aggravating factors applied to the sexual assault charges: the defendant employed a dangerous instrument in furtherance of the offense, AS 12.55.155(c)(4); the defendant's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior, AS 12.55.155(c)(8); and the defendant was on furlough under AS 33.30 or on parole or probation for another felony charge or conviction, AS 12.55.-155(c)(20). Judge Johnstone specifically rejected the aggravator alleging that the conduct was the most serious conduct included in the definition of the offense, AS 12.55.-155(c)(10).

For the robbery charge, Judge Johnstone found two aggravators: criminal history which includes assaultive behavior, AS 12.-55.155(c)(8); and defendant was on parole or probation, AS 12.55.155(c)(20). Judge Johnstone also found that the robbery was mitigated because it could be characterized as being the least serious conduct constituting the offense. AS 12.55.155(d)(9).

As a third felony offender, Napayonak was subject to a twenty-five year presumptive term for each of the sexual assaults. AS 12.55.125(i)(4). Applying the aggravators, Judge Johnstone sentenced Napayonak to thirty years on each sexual assault count. The two sentences were imposed concurrently. On the robbery charge, Napayonak was subject to a presumptive fifteen-year term. AS 12.55.125(c)(4). Judge Johnstone imposed a mitigated seven and one-half year presumptive term for the robbery and ordered that the sentence run concurrently with the first two sentences. Because Napayonak was on probation at the time of the offense, the court was required to consider probation revocation. Judge Johnstone imposed the one year of suspended time on the prior conviction concurrently to the other three sentences.

Napayonak points out that Judge Johnstone imposed the maximum thirty-year term for each of the sexual assault convictions. AS 12.55.125(i). Maximum sentences are generally not imposed without some foundation for characterizing the defendant as a "worst offender." *State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975). Some of the factors which are considered in making such a determination are a prior criminal record, employment history, drug and alcohol addiction, the presentence report evaluations and behavior which has been considered to demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public. *Id.*

Napayonak contends that his conduct did not merit the maximum sentence because he cannot be characterized as a worst offender. He points out that Judge Johnstone expressly rejected the "most serious conduct" aggravator and found the sexual assault offenses to be unremarkable. He compares his conduct to that of the appellants in *Hintz v. State,* 627 P.2d 207, 210–11 (Alaska 1981), and *Tookak v. State,* 648 P.2d 1018, 1023–24 (Alaska App.1982), where sentences for rape and kidnapping convictions were remanded to the trial court with instructions that they not exceed thirty years. Both of the cases involved offenses where the victim was accosted as she entered her car, forced to drive to a secluded location, and raped. Hintz and Tookak both used guns and Tookak had an extensive criminal background. Napayonak contends that his conduct was relatively less brutal and that, consequently, he is entitled to a more favorable sentence.

However, the sentencing court may also consider other factors, such as the defendant's background, when determining whether an individual defendant was a "worst offender." Napayonak's criminal history includes two prior felonies. In 1981, Napayonak was convicted for assault in the third degree for firing a rifle into a school gymnasium while a volleyball game was taking place. There were approximately 45 spectators in the gymnasium at the time. In 1984, he was again convicted for third-degree assault after tying his wife

to a piece of furniture and waving a lighted blowtorch near her while threatening to kill her.

Following the blowtorch incident, Napayonak was evaluated at the Alaska Psychiatric Institute and diagnosed as having a "mixed personality disorder with borderline paranoid and avoidant features." The doctor believed that Napayonak could be "impulsively assaultive." While he was on probation, Napayonak was admitted to Clithroe and assessed as alcohol dependent with "inappropriate externalization of anger." He was terminated from alcohol counseling in 1986 for failure to cooperate with the program. Although Judge Johnstone did not expressly find Napayonak to be a worst offender, the record indicates that he considered all the appropriate factors to justify imposition of the maximum sentence.

In evaluating a defendant as a worst offender for the purpose of imposing a maximum sentence, the manner in which the crime was committed as well as the defendant's character and background are significant. *Tucker v. State,* 721 P.2d 639, 643 (Alaska App.1986). It is clear from the record that Judge Johnstone essentially found Napayonak to be a "worst offender." *See Neal v. State,* 628 P.2d 19, 21 (Alaska 1981). Therefore, we conclude that the two thirty-year concurrent sentences for the sexual assault and the concurrent sentence on the robbery conviction were not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974). *See Amarok v. State,* 789 P.2d 377 (Alaska App.1990) (upholding sentence of thirty-six years with three years suspended for third felony offender convicted of sexual assault and burglary).

■ However, Judge Johnstone did err in imposing the one-year sentence on the probation revocation concurrently to the other sentences. Alaska Statute 12.55.-025(e) states in relevant part:

[I]f the defendant has been convicted of two or more crimes, sentences of imprisonment shall run consecutively. If the defendant is imprisoned upon a previous

judgment of conviction for a crime, the judgment shall provide that the imprisonment commences at the expiration of the term imposed by the previous judgment. In *Jennings v. State*, 713 P.2d 1222, 1223 (Alaska App.1986), we held that trial judges are required to impose consecutive sentences on individuals convicted for crimes which were committed after they had been imprisoned on a former offense. *See Gibson v. State*, 719 P.2d 687, 692 n. 3 (Alaska App.1986). Since Judge Johnstone chose to revoke Napayonak's probation, the state argues that he must be required on remand to impose the year consecutively to the other sentences. *See* Alaska R.Crim.P. 35(a) (the court may correct an illegal sentence at any time).

. Napayonak concedes that the trial court erred but claims that this court does not have the jurisdiction to grant relief to the state. Napayonak relies on *State v. Price*, 715 P.2d 1183 (Alaska App.1986). In that case, the state appealed a trial court ruling denying its motion to correct an illegal sentence under Criminal Rule 35(a). We pointed out that while the state may appeal a sentence on the ground that it is too lenient, this court could only issue an advisory opinion. A sentence appeal by the state does not permit an increase in the defendant's sentence. *Price*, 715 P.2d at 1185–86. The only remedy the state has is to petition for review.

Napayonak, though, is willing to waive procedural defects in the state's claim if this court remands the sentence with instructions in accordance with *Joseph v. State*, 712 P.2d 904 (Alaska App.1986). We conclude that *Joseph* governs the issue in question and therefore accept Napayonak's waiver and remand the sentence for further consideration by the sentencing court.

In *Joseph*, the trial court also erroneously imposed a probation revocation sentence concurrently with the sentence imposed for the most recent conviction. At sentencing, the judge stated "it's my intention that [Joseph] be given ten years in jail to serve, and that he be given a substantial period of probation. The statute does not mandate a consecutive sentence." 712 P.2d at 905

(brackets original). The state argued to the court that under AS 12.55.025(e), consecutive sentences were required. The judge accepted the argument and entered a judgment imposing the two sentences consecutively. Joseph appealed. *Id.*

We assumed that a judgment unlawfully imposing concurrent sentences could, under certain circumstances, be corrected to impose the sentences consecutively without violation of the prohibition against double jeopardy. However, we concluded that, under the circumstances, it had been improper to correct Joseph's sentence by requiring him to serve the two terms consecutively. *Id.* at 906. We held that an unlawful sentence would only be increased when the increase was actually necessary to correct the illegality. As long as it was possible for the sentencing court to carry out its original intent, the sentence would not be increased. *Id.* In Joseph's case, we found that the judge had clearly expressed an intent to require Joseph to serve a total term of ten years, with an additional five-year period of probation. We determined that the judge could carry out his original intent without violating AS 12.55.025(e) by requiring Joseph to continue on probation instead of imposing a jail term. Since this alternative was possible, the sentencing court was obligated to use it rather than the alternative of consecutive sentences. *Id.*

From Judge Johnstone's sentencing comments, it seems that he also expressed an intent that the defendant serve a specific amount of time—in this case, "a flat 30 years." Since the intent to require Napayonak to serve a thirty-year term is clear, alternatives must be considered which correct the illegality of the concurrent sentences without increasing the total time to serve. *Joseph*, 712 P.2d at 906. In accordance with *Joseph*, the sentencing court can impose a twenty-nine year term for each of the sexual assaults and impose the one-year term for probation revocation consecutively for a total sentence of thirty years or it can revoke probation without imposing any prison time.

The conviction on the robbery charge is AFFIRMED and the sentence is RE-MANDED for adjustment in accordance with *Joseph*.