**Steven Bradley POWELL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7920.**

Court of Appeals of Alaska.

April 9, 2004.

Paul E. Malin, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

James J. Fayette, Assistant District Attorney, John J. Novak, Acting District Attorney, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

On the evening of January 30, 1999, Steven Bradley Powell was driving the streets of Anchorage with a blood alcohol level of .195 percent. He was heading east on Tudor Road, nearing the curve where Tudor Road becomes Muldoon Road. Powell was driving slightly over the speed limit, and the road surface was slick from freshly fallen snow. As Powell rounded the curve and began heading north, he lost control of his vehicle and slid into the on-coming lanes, striking three other vehicles. Powell injured four people, two of them seriously.

Based on this incident, Powell was convicted of two counts of first-degree assault, one count of reckless endangerment, and one count of driving while intoxicated. And,

based on these convictions, the superior court revoked Powell's probation from a 1997 conviction for third-degree assault.

Powell's two counts of first-degree assault were his fourth and fifth felony convictions. (In addition to his prior conviction for third-degree assault, Powell had two convictions for third-degree controlled substance misconduct (sale of cocaine).) Thus, Powell was a "third felony offender" for presumptive sentencing purposes.[1]

Powell's current felony offenses are class A felonies.[2] Because he was a third felony offender convicted of a class A felony, Powell faced a presumptive term of 15 years' imprisonment on each of the two counts of first-degree assault.[3]

The superior court sentenced Powell to a composite sentence of 26 years' imprisonment—25 years for his four current offenses, and a consecutive 1 year of previously suspended jail time from his 1997 assault conviction. On appeal, Powell contends that this sentence is excessive.

Powell points out that neither this Court nor the supreme court has ever affirmed such a lengthy sentence for vehicular homicide, much less vehicular assault—that is, driving offenses that did not cause anyone's death. Based on his criminal history (which we describe in detail below), Powell concedes that he could properly be sentenced to 20 years' imprisonment (the maximum penalty for one count of first-degree assault). But Powell argues that a sentence of 26 years to serve is overly harsh.

Powell asserts—and the State essentially concedes—that his conduct in this case, and the injuries he inflicted, are typical for a case of first-degree assault committed by an intoxicated driver. But the State argues that Powell's criminal history reveals that he presents an extraordinary danger to the public, and that a composite sentence of 26 years' imprisonment is therefore justified.

We have independently reviewed the record, and we agree with the State that Powell's case presents an extraordinary instance

---

1. AS 12.55.185(14).

2. AS 11.41.200(b).

3. AS 12.55.125(c)(4).

where a 26 year composite sentence for vehicular assault is not clearly mistaken, even though Powell killed no one. We therefore affirm Powell's sentence.

### Powell's criminal history

We have already summarized the facts of Powell's current offenses. And, as we have explained, the State does not argue that Powell's sentence is justified by the seriousness of his current offenses. Rather, the State essentially concedes that Powell's current offenses are unremarkable among first-degree assaults committed by intoxicated drivers. Accordingly, we will not describe Powell's current offenses in any further detail. Instead, we turn to an extensive examination of Powell's criminal history.

The most salient aspect of that history is Powell's eleven prior convictions for driving while intoxicated. Twice before, Powell had received the maximum sentence for DWI (1 year's imprisonment). At Powell's sentencing, the prosecutor presented a chart of these offenses; the prosecutor calculated that, starting in the year 1983, the average span between Powell's release from custody and his next DWI offense was 88 days.

In addition, Powell has eight prior convictions for driving with a suspended or revoked license, one conviction for reckless driving, and one conviction for leaving the scene of an accident. Indeed, a witness who observed Powell at the scene of the accident in the present case testified that Powell was trying to restart his car and drive away. At the time of his current offenses, Powell's driver's license had already been revoked well into the twenty-second century—i.e., past the year 2100.

Unfortunately, the two preceding paragraphs only begin to tell the story. Aside from his many driving offenses, Powell had several prior convictions for assault, and he also had convictions for disorderly conduct, making a false report, carrying a concealed weapon, resisting arrest, failure to appear, shoplifting, eluding a police officer, unsworn falsification, and criminal trespass.

Between 1978 and 1982 (that is, when Powell was between the ages of 17 and 21),

Powell had two convictions for DWI, plus convictions for reckless driving, resisting arrest, and assault (for siccing a dog on two little girls). By 1983, Powell had accumulated his third and fourth DWI convictions, and he was ordered into alcohol treatment at Humana Hospital.

Between 1984 and 1985, Powell was convicted of eight more misdemeanors: a second reckless driving, plus disorderly conduct, making a false report, possession of a firearm while intoxicated, two counts of carrying a concealed weapon, assault, and assault on a police officer.

In 1985, Powell was arrested on two counts of selling cocaine. Following his arrest, Powell posted bail and then absconded to California. He committed his fifth DWI in Redding, California; when he was arrested, he gave the California authorities a false name. Then, after getting out of jail in California, Powell fled to Florida—where he committed his sixth DWI. As he had done in California, Powell gave a false name to the Florida authorities. And after the Florida court released him on probation, he absconded again.

In early 1986, Powell was making his way back to Alaska. In March, he was arrested in the State of Washington for driving with a suspended license. Later, he arrived in Haines—where he was convicted of assault. (The district court was apparently unaware of Powell's record, because he received a suspended imposition of sentence for this crime.)

In May 1986, Powell was arrested in Anchorage on the felony warrant that had been issued the previous year when he jumped bail. Soon afterward, Powell was convicted of his first two felonies (two counts of third-degree controlled substance misconduct), but he received a relatively lenient sentence—130 days in jail, with no probation. He was released from prison in September 1986. Seven months later, in April 1987, Powell committed another DWI, although he was never convicted of this charge. (The charge was ultimately dismissed in January 1988 because Powell was in federal prison, as described in the next paragraph.)

In June 1987, Powell got drunk at the Russian River and assaulted a federal fish and wildlife officer. The federal district court released Powell to the Glennwood Center (a treatment center), but Powell absconded. He fled Alaska, but he was soon arrested for shoplifting in Reno, Nevada—where he again gave a false name to the authorities. After serving his sentence in Nevada, Powell returned to Alaska (still on the run from his federal charges). He was arrested by federal marshals in October 1987, and the federal district court sentenced Powell to serve 11 months in prison. (This is apparently why the Municipality of Anchorage dismissed Powell's pending DWI charge in January 1988.)

In November 1989, Powell was again arrested for DWI. He had run a red light, he was weaving between lanes, and his blood alcohol level was .229 percent. This became his seventh DWI conviction.

In February 1990, twenty days after completing his sentence for that seventh DWI conviction, Powell was once more arrested for DWI. The district court released Powell to the Salvation Army treatment program, but he absconded after one day. Following his recapture (described in the next paragraph), Powell was convicted of his eighth DWI for this February incident.

In June 1990, after eighty-one days as a fugitive from the February charge, Powell was arrested after the police stopped him for driving a vehicle with a cracked windshield. His blood alcohol level was .237 percent, and he gave a false name to the police. Based on this incident, Powell was convicted of DWI for the ninth time. But in July 1990, before that conviction was entered, and while Powell was on bail release, Powell got drunk and assaulted staff members at the Alaska Native Medical Center. (Again, Powell gave a false name when he was arrested.)

In November 1991, Powell drove while intoxicated and caused a collision. After the collision, Powell tried to switch seats with his passenger and thus avoid responsibility. Based on this incident, Powell was convicted of his tenth DWI.

In February 1992, Powell was convicted of leaving the scene of an accident and driving with a suspended license.

Powell was released from jail on April 1, 1993. Twenty days later, he was arrested for his eleventh DWI. While he was awaiting trial, Powell wrote letters to some friends, urging them to lie for him. Following his conviction, the Department of Corrections furloughed Powell to Akeela House (a treatment center). Within six weeks, Powell absconded. He remained a fugitive for five months. Following his arrest, he was convicted of DWI and escape.

Powell was released from prison in late 1994. In early 1995, he was arrested for driving with a suspended license. Later, in May 1995, he committed an assault on his father. Thirteen days after he was released on bail from this assault charge, he was arrested for shoplifting (when he again gave the police a false name).

After being convicted of these various offenses, Powell was again released from prison in May 1996. Seventeen days later, Powell assaulted his father again. He finished serving his sentence for this crime in July 1996. One week later, Powell was arrested twice for driving with a suspended license. The first time, the police gave him a citation and let him go; the second offense occurred six hours later.

Powell was arrested for the second offense, but after he posted bail, he absconded. He was arrested four weeks later in Tukwila, Washington, for assaulting his girlfriend. (Powell again gave the police a false name when he was arrested).

After spending a few days in jail in Washington, Powell returned to Anchorage. The police arrested him on his outstanding warrants in November 1996. During that arrest, Powell assaulted and threatened to kill one of the arresting officers.

Powell was released from prison on July 29, 1997. Two days later, the police were summoned to Powell's residence because of a fight, and Powell was arrested. When the police brought Powell to be booked at the Sixth Avenue Jail, he began to destroy the booking room—throwing typewriters and

computers at the officers, and causing several thousand dollars'·damage. Based on this incident, Powell was charged with felony assault (his third felony).

In August 1997, with this felony charge pending, Powell was released to Sundown Ranch, a treatment program in the State of Washington, upon the promise that he would return to court for a hearing on September 18th. Instead, Powell jumped bail and remained a fugitive for almost eight months.

In April 1998, Powell was arrested at his Anchorage residence. While awaiting trial, he was released to Genesis House (a treatment center). In November 1998, Powell was convicted of the 1997 felony assault, but he was apparently allowed to continue his residence at Genesis House.

Shortly thereafter, in late November 1998, Genesis House released Powell. Sixty-eight days later, in January 1999, Powell committed the offenses in the present case: his twelfth DWI, plus two counts of first-degree assault (for seriously injuring two people) and one count of reckless endangerment.

While the present charges were pending, one of Powell's victims (Roberto Hernandez) sued him in small claims court to recover damages stemming from the collision. At the trial in front of District Court Judge James N. Wanamaker, Powell committed perjury by falsely testifying that he had not been driving the vehicle. (Powell testified that he had been lying asleep in the back seat at the time of the collision.)

*The superior court's findings and sentencing decision*

As already explained, Powell was a third felony offender convicted of two class A felonies (first-degree assault). The presumptive term for a third felony offender convicted of a class A felony is 15 years' imprisonment, and the maximum term of imprisonment for a class A felony is 20 years.[4]

4. AS 12.55.125(c).

5. *See* AS 12.55.155(a)(2).

6. *Id.*

7. *See State v. Wortham,* 537 P.2d 1117, 1120 (Alaska 1975), *Napayonak v. State,* 793 P.2d

Superior Court Judge Milton M. Souter presided over Powell's sentencing. He found that the State had proved four aggravating factors under AS 12.55.155(c): (c)(20)—that, at the time of his present offense, Powell was on felony probation (from the 1997 third-degree assault); (c)(6)—that Powell's conduct created a risk of imminent injury to three or more persons; (c)(15)—that Powell had more than two prior felony convictions; and (c)(8)—that Powell's criminal history included repeated instances of assault. (Powell did not dispute these four aggravators.)

Based on these aggravators, Judge Souter was authorized to impose a sentence of up to 20 years' imprisonment on each of Powell's first-degree assault convictions.[5] Because Powell did not prove (or even assert) any mitigating factors, the 15–year presumptive term was, in essence, the minimum sentence that Judge Souter might impose for these two felonies.[6]

The prosecutor asked Judge Souter to impose 20 year maximum sentences for each of Powell's two first-degree assault convictions, to make these two felony sentences consecutive by at least 5 years, and to limit Powell's parole eligibility by requiring him to serve at least 20 years before he became eligible for parole. Powell's attorney conceded that Powell should receive 20 years to serve, but she asked Judge Souter to impose no more than that.

Thus, in practical terms, Judge Souter was confronted with two major decisions: (1) whether to impose a composite sentence that exceeded the 20–year maximum for a single count of Powell's most serious offense (first-degree assault), and (2) whether to restrict Powell's parole eligibility.

Based on Powell's extensive record of criminal offenses and his repeated failures at rehabilitation, Judge Souter found that Powell was a worst offender for sentencing purposes.[7] The judge expressed "grave doubt

1059, 1062 (Alaska App.1990) (defining the term "worst offender", and explaining that a "worst offender" finding can be based either on the circumstances surrounding the defendant's present offense, or on the defendant's criminal history, or both).

that further rehabilitative efforts are going to bear [fruit]".

Having made this "worst offender" finding, Judge Souter was authorized to impose a composite sentence of up to 20 years' imprisonment (the maximum penalty for a single count of first-degree assault, Powell's most serious offense).[8] But under the *Neal–Mutschler* rule established by our supreme court, Judge Souter could not impose a sentence exceeding 20 years to serve unless he affirmatively found that a longer term of imprisonment was necessary to protect the public.[9]

Judge Souter did not expressly mention the *Neal–Mutschler* rule in his sentencing remarks, but he explained why he had small hopes for Powell's rehabilitation, and why he believed that Powell was a particularly dangerous offender:

> *The Court:* I have to look at reality. I have to consider [the] risks to the public here. Because of the long, continued nature of Mr. Powell's alcoholism, his inability to control his conduct when he is drinking—he gets violent when he's drinking, he just cannot control himself when he drinks. He drinks to excess, and then he can't control himself.... [T]his pattern ... [is] deeply ingrained, it's deeply rooted. He's been doing this ... since he was an adolescent, ... [for] over twenty years. We're talking thirteen [*sic:* twelve] known convictions for driving while intoxicated. We're talking several other alcohol-related convictions[.] ...
>
> And the worst part ... for society is that Mr. Powell is dangerous. He's a real threat to the life and the limb of other people on the highway. It's a wonder that he has not killed ... or seriously maimed somebody [or] crippled them. He hurt two people seriously in this case....

Judge Souter also explained why he had decided to sentence Powell to "straight time" (that is, a sentence consisting solely of time to serve) rather than imposing a partially suspended sentence with attendant probation:

> *The Court:* As much as I would like to be able to decide [this] issue the other way, ... I cannot avoid the conclusion that Mr. Powell is a danger to others and that he has got to be incarcerated for a long time for the sake of other people, the sake of the safety of other people. Now, oftentimes, judges order ... probationary sentences on top of prison-time sentences because they want to encourage rehabilitation and they want to maintain control of [an offender] after ... they get out of jail.[But] I'm not going to do that in this case because ... [the] evidence here is very strong ... that Mr. Powell is not going to rehabilitate [himself]. As soon as he gets out of jail, he's going to start doing it again. That's the weight of the evidence. I hope he can do it, I hope he can change, but the weight of the evidence is that he won't, ... based on [our] past experience with him [in] the justice system[.]

At the same time, Judge Souter rejected the prosecutor's request for a restriction on Powell's parole eligibility:

> *The Court:* I'm going to order ... straight-time sentences, [but] I'm going to let the Parole Board deal with [Mr. Powell]. Because I cannot foresee the future, I'm not going to restrict parole [as the prosecutor has asked]. I'm going to leave [parole] up to the Parole Board—which is tough: they're no pushovers.... I think the Parole Board can do the job here.... I don't need to be telling the Parole Board that they cannot [release] this man on parole if they really believe that he has become rehabilitated.

Finally, Judge Souter stated that he believed Powell's sentences should be partially consecutive because, even though Powell's offenses arose from a single incident, "there were multiple victims [involved]".

8. *See id.*

9. *See Neal v. State,* 628 P.2d 19, 21 (Alaska 1981): "Our past decisions imply that where consecutive sentences for two or more counts exceed the maximum sentence for any single count, the sentencing judge should make a formal finding that confinement for the combined term is necessary to protect the public." (Citing *Mills v. State,* 592 P.2d 1247, 1248 (Alaska 1979), and *Mutschler v. State,* 560 P.2d 377, 381 (Alaska 1977)).

Judge Souter then sentenced Powell to the following terms of imprisonment: The judge imposed an 18–year sentence on each count of first-degree assault, and he made 6 of those years consecutive. In addition, Judge Souter imposed a consecutive 1–year sentence for Powell's reckless endangerment conviction—thus making a total of 25 years to serve. (Judge Souter also imposed 1 year's imprisonment for Powell's DWI conviction, but he made this concurrent to Powell's other sentences.)

After imposing these sentences, Judge Souter revoked Powell's probation from his 1997 felony assault conviction and imposed 1 year of Powell's previously suspended jail time. This probation revocation sentence was consecutive to Powell's sentences for his current offenses.

Thus, all told, Judge Souter sentenced Powell to serve 26 years in prison. Shortly after the judge imposed this sentence, the judge urged Powell to pursue rehabilitative treatment when he was released from prison. Powell answered with a sarcastic remark. Powell also complained openly about the fact that he would not be eligible for parole until he was in his fifties. This prompted Judge Souter to declare:

> The Court: If you don't change your attitude and your behavior, it scares the hell out of me what you'll do to somebody out on the street. And that's why I've got to send you away, the way I'm doing. And if you think I enjoy doing this to a fellow human being, you're wrong. I don't. It doesn't make me feel any happier to have to do this, but I'm doing my duty.... It's what I've got to do for the sake of everybody.

*Our analysis of the superior court's sentencing decision*

As we noted earlier, Judge Souter did not expressly refer to the *Neal–Mutschler* rule when he sentenced Powell to a composite term of 26 years to serve—a term that exceeded the 20–year maximum sentence for Powell's most serious offense. However, an express finding is not always required. In *Neal* itself, the supreme court declared that no express finding was needed under the following circumstances:

> The record contains ample evidence that [the defendant] presents a risk of continued criminal conduct which would seriously threaten the public safety. [The defendant] was twenty-nine years of age at the time of sentencing. He has been a heroin addict for ten years and has compiled a lengthy criminal record, including numerous felony and misdemeanor drug offenses and several property offenses. Extensive drug rehabilitation efforts have been a failure. With complete foresight [the defendant] helped to plan, organize, and carry out a highly dangerous and extremely serious crime [armed robbery of a bank]. It is clear that [the defendant] presents a threat of criminal conduct which would seriously threaten the public safety. Given his repeated rehabilitative failures and his conduct on this occasion, the threat is substantial.

*Neal*, 628 P.2d at 21. See also *Waters v. State*, 64 P.3d 169, 174–75 (Alaska App.2003), where we upheld a composite sentence that exceeded the maximum for the defendant's single most serious offense, even though the sentencing judge failed to make an express *Neal–Mutschler* finding, when the defendant "was a mature adult with a lengthy history of serious offenses and a seemingly intractable substance abuse problem".

Like the defendants in *Neal* and in *Waters*, Powell is a mature offender whose conduct over the preceding two decades has shown him to be both exceptionally dangerous and seemingly incorrigible. Powell's 15–year presumptive term is based on his prior felony convictions, but Powell's dangerousness is more clearly demonstrated by his almost two dozen convictions for driving offenses. Chief among these are his eleven prior convictions for driving while intoxicated. But Powell also has been convicted eight times for driving with a suspended or revoked license, once for reckless driving, and once for leaving the scene of an accident.

Moreover, Powell is distinguished from the typical drunk driving offender because his criminal history also demonstrates a propensity for violence. He has been convicted of

one felony assault and several other misdemeanor assaults (as well as resisting arrest).

Finally, the record demonstrates Powell's contempt for authority and his disdain for any efforts to foster his rehabilitation. Again and again, Powell has jumped bail when facing criminal charges. He also committed perjury in an attempt to avoid liability when he was sued for damages stemming from his current offenses. Dozens of criminal convictions and jail sentences have failed to deter Powell from further criminal activity—most notably, his continuing string of drunk driving offenses. And, perhaps most important, Powell has repeatedly absconded from alcohol treatment programs.

As was true in *Neal*, the sentencing record in Powell's case shows that he "presents a [substantial] threat of continued criminal conduct which would seriously threaten the public safety". That record fully supports the conclusions that Powell poses a great danger to the public safety, that Powell has poor prospects for rehabilitation, and that, unless and until Powell is rehabilitated, the only way to protect the public from him is to keep him isolated in prison.

We acknowledge that Powell's 26–year sentence exceeds any that we have affirmed for defendants convicted of vehicular homicide.[10] However, as we explained above, Powell is a third felony offender who faced a presumptive term of 15 years. (Indeed, because Powell did not propose any mitigating factors, this 15–year presumptive term was essentially the mandated minimum term.)

This 15–year presumptive term represents the legislature's judgement as to the prison term that should be imposed on a typical third felony offender who commits a typical act of first-degree assault.[11] But Powell is not a typical third felony offender.

First, Powell had three prior felonies, not just two. Second, Powell was being sentenced for two first-degree assaults, not just one. Third, Powell's criminal history includes eleven prior convictions for driving while intoxicated, as well as several convictions for misdemeanor assault. Fourth, Powell has engaged in repeated violations of bail and probation conditions, often accompanied by flight from Alaska, and he continues to drive even though, because of past offenses, his license has been revoked for more than the next hundred years. And fifth, Powell has repeatedly refused to engage in treatment for his alcoholism.

When we consider these aspects of Powell's case in combination, we conclude that Judge Souter was not clearly mistaken when he sentenced Powell to a composite term of 26 years to serve.[12] The sentencing decision of the superior court is therefore AFFIRMED.

---

10. *See Pusich v. State*, 907 P.2d 29 (Alaska App. 1995) (upholding a composite sentence of 18 years to serve—25 years with 7 years suspended—for a consolidated count of manslaughter charging three deaths, and one count of first-degree assault); *Foxglove v. State*, 929 P.2d 669 (Alaska App.1997) (upholding a composite sentence of 19 years to serve for one count of manslaughter and four counts of first-degree assault, plus another first-degree assault arising from a separate incident).

11. *See Mullin v. State*, 886 P.2d 1323, 1328 (Alaska App.1994); *Juneby v. State*, 641 P.2d 823, 833, 838 (Alaska App.1982).

12. *See McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974) (an appellate court is to uphold a sentencing decision unless the sentence is clearly mistaken).