Kristopher William **FELBER**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. A–10384.

Court of Appeals of Alaska.

Dec. 3, 2010.

Brian T. Duffy, Assistant Public Advocate, Appeals and Statewide Defense Section, and Rachel Levitt, Public Advocate, Anchorage, for the Appellant.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

This case involves an effort by the defendant, Kristopher William Felber, to withdraw from a plea agreement that he reached with the State of Alaska. Under this agreement, Felber pleaded guilty to twenty-three criminal charges—ranging from second-degree murder and several counts of first-degree assault, to vehicle theft, driving under the influence, and driving with a suspended license.

The plea agreement called for the superior court to impose a composite sentence of between 50 and 85 years to serve (with the possibility of additional suspended jail time). But after Felber accepted the plea agreement and entered his guilty pleas, he became convinced that even the minimum sentence envisioned by the plea agreement—i.e., 50 years to serve—was unjustifiably severe under Alaska sentencing law. Felber therefore asked the superior court to release him from the plea agreement.

What makes this case unusual is that Felber offered to unconditionally plead guilty again to all of the charges against him if the superior court allowed him to withdraw from the plea agreement. In other words, Felber remained willing to concede his guilt as to all charges, but he did not want the superior court to be bound by the 50–to 85–year sentencing range specified in the plea agreement.

As we explain in this opinion, the true underlying issue in this case is whether the sentencing range specified in the plea agreement subjected Felber to a sentence so severe that it could not be justified under the sentencing criteria codified in AS 12.55.005 and prior Alaska sentencing case law. We conclude that Felber's sentence is justified, given the totality of his conduct and his background. Accordingly, we conclude that Felber failed to demonstrate a fair and just reason to withdraw from the plea agreement.

### Underlying facts

On the morning of January 31, 2006, Kristopher Felber stole a truck that was idling outside a residence in the Muldoon area of Anchorage. Felber ran a stop sign and turned south onto Boniface Parkway (an arterial road running north-south)—almost colliding with two vehicles in the process. The driver of one of these vehicles later described Felber's driving as "above and beyond crazy".

This driver followed Felber to the intersection of Boniface Parkway and Northern Lights Boulevard, where Felber turned right (west) and accelerated the stolen truck to a speed of 70 to 80 miles per hour. As Felber approached East High School (i.e., near the intersection of Northern Lights Boulevard and Bragaw Street), an Anchorage police patrol vehicle began following Felber, and soon three other police cars joined the pursuit. Additional patrol cars positioned themselves to block off the intersection of Northern Lights Boulevard and Lake Otis Parkway (the next major intersection that Felber would encounter as he drove west).

By coordinating their efforts, police officers in four patrol cars managed to box Felber in and bring him to a halt. The officers approached Felber with drawn weapons and flashlights; they ordered him to get out of the stolen truck and to keep his hands in plain view.

Although Felber was seemingly trapped, he suddenly put the truck into reverse and accelerated backward, ramming the patrol vehicle that was stationed behind him and forcing a police officer to scramble out of the way to avoid being run down. Felber then put the truck into drive and accelerated again—this time forcing two officers who were in front of him to dash to the side to avoid being hit. Felber struck two police vehicles and rammed the cars of several civilians as he plowed an escape route westward on Northern Lights. One of the witnesses described the scene as "the infield of [a] demolition derby".

Felber drove his truck over the median that separates the eastbound and westbound traffic on Northern Lights Boulevard, so that he was driving the wrong way in the eastbound lanes when he approached the intersection of Northern Lights and Lake Otis

Parkway. Two of the police officers at the scene fired shots at Felber in an effort to stop him, but these shots missed. When Felber got to the intersection, he turned north on Lake Otis Parkway and accelerated to a speed of close to 80 miles per hour.

At the next controlled intersection (the intersection of Lake Otis Parkway and East 20th Street), Felber ran a red light and collided with a Chevrolet driven by Stephen Strain. Felber did not make an appreciable effort to slow his vehicle before the collision: he struck the Chevrolet at approximately 60 miles per hour, and he kept his foot on the gas even after colliding with the Chevrolet.

Felber pushed the Chevrolet northward 75 feet—where both Felber's truck and the Chevrolet came to rest. In the process, Felber's stolen truck and the Chevrolet collided with three other vehicles and injured the drivers of those vehicles. As for Stephen Strain (the driver of the Chevrolet), he suffered multiple blunt force injuries, and he died at the scene.

Felber immediately fled the scene of this collision. When the police arrived at the scene, they found the stolen truck with no one inside. Forty minutes later, Felber was observed walking on a nearby street. When the police stopped him, Felber was wearing a glove on his left hand, but his right hand was ungloved and in his pocket. The matching glove was found next to the passenger door of the stolen truck.

Felber claimed that he had just come from a nearby house and that he had not been driving. His breath smelled of alcoholic beverages, and he appeared to be intoxicated. Later testing of Felber's blood showed that he had a blood alcohol level of between .11 and .13 percent, and that his blood also contained a sufficient amount of THC (the active component of marijuana) to independently impair his ability to drive.

Based on these events, Felber was indicted for second-degree murder (and an alternative count of manslaughter) for causing the death of Stephen Strain, and on four counts of first-degree assault (together with four alternative counts of third-degree assault) for causing serious physical injury to the drivers of four other vehicles. In addition, Felber was indicted on four counts of third-degree assault for placing four police officers in fear of imminent serious physical injury, and five more counts of third-degree assault for placing five other motorists in fear of imminent serious physical injury. Finally, Felber was indicted for first-degree vehicle theft (for stealing the truck), first-degree eluding a police officer (for failing to stop when directed to do so on Northern Lights Boulevard), and failing to stop and render aid after an injury accident.

The State later filed an information charging Felber with two misdemeanors: driving under the influence, and driving when his license was revoked, suspended, or canceled.

### The plea agreement

At the time of the events described in the preceding section of this opinion, Felber had already been convicted of two prior felonies. He was therefore a third felony offender for presumptive sentencing purposes.[1] Felber also had several prior misdemeanor convictions, as well as a lengthy record as a juvenile.

One of Felber's prior felonies bore a striking resemblance to the events of the present case: Felber, while intoxicated, stole a commercial truck that had been left idling outside the business premises. He drove the truck so recklessly that he collided with three parked cars and then lodged the truck in a snowbank. When the police approached the scene, Felber fled on foot (but was apprehended). Based on this incident, Felber was convicted of first-degree vehicle theft and driving under the influence.

One of Felber's prior misdemeanors also involved conduct that mirrored Felber's conduct in the present case. Felber stole a vehicle that had been left idling outside a residence. He drove the vehicle on icy roads at speeds exceeding 95 miles per hour, despite the fact that his passenger—fearful for his life—pleaded with Felber to pull over and let him out. The vehicle ultimately became stuck on a median, and Felber fled the scene.

1. AS 12.55.185(17).

Because Felber was a third felony offender, he faced a presumptive sentencing range of 15 to 20 years' imprisonment for each of his four counts of first-degree assault,[2] and a presumptive sentencing range of 3 to 5 years' imprisonment for each of the nine third-degree assault counts involving victims other than those named in the first-degree assault counts.[3]

Felber's most serious offense, second-degree murder, is not governed by presumptive sentencing. For this crime, Felber faced an indeterminate sentence of between 10 and 99 years' imprisonment.[4]

■ This Court has established a benchmark sentencing range of 20 to 30 years to serve for first felony offenders convicted of second-degree murder.[5] As we explained in *Carlson v. State*, 128 P.3d 197, 203 (Alaska App.2006), "The legal effect of [this] benchmark range is that sentencing judges who wish to impose more than 30 years to serve for the crime of second-degree murder must explain why they view the defendant as having a worse background than that of a typical first felony offender, or why they view the defendant's crime as worse than a typical second-degree murder."

To resolve the charges against Felber, the State offered the following plea agreement: Felber would plead guilty to all the counts of the indictment except the manslaughter count (which was a lesser alternative to the second-degree murder count), and Felber would concede that the State's recitation of the underlying facts of the case (contained in the charging document) was accurate. Felber would further agree to accept a composite sentence of at least 50 years to serve. The State, for its part, agreed to accept a composite sentence of no more than 85 years to serve (although the superior court would be free to impose additional suspended jail time).

As we explained earlier, four of the third-degree assault counts in the indictment involved the same victims as the four first-degree assault counts. In other words, these four third-degree assault counts were alternative lesser charges. As the superior court recognized at the sentencing hearing, Felber could not lawfully receive separate convictions and sentences for both first-degree assault and third-degree assault upon the same victim stemming from the same criminal episode. For this reason, the superior court merged these four third-degree assault counts with the corresponding first-degree assault counts.

As a consequence, the true nature of Felber's plea agreement was that he would receive a composite sentence of between 50 and 85 years to serve for one count of second-degree murder, four counts of first-degree assault, nine counts of third-degree assault, one count of first-degree vehicle theft, one count of first-degree eluding a police officer, one count of failing to stop and render aid after an injury accident, one count of misdemeanor driving under the influence, and one count of driving when his license was revoked, suspended, or canceled.

In early November 2007, Felber (through his attorney) announced that he intended to accept this offered plea bargain. On November 13th, Felber appeared in front of Superior Court Judge Philip R. Volland and formally entered a guilty plea to each of the charges against him (with the exception of the manslaughter charge, which was ultimately dismissed).

*Felber's motion to withdraw from the plea agreement*

In November 2008, Felber appeared in the superior court for sentencing. After the victim impact statements were presented, and after the prosecutor made his sentencing remarks, Felber's attorney commenced his sentencing argument. During this argument, the defense attorney directed Judge Volland's attention to various past sentencing decisions of this Court—decisions in which drunk or reckless drivers who killed and injured several people received sentences

---

**2.** AS 12.55.125(c)(4).

**3.** AS 12.55.125(e)(3).

**4.** AS 12.55.125(b).

**5.** *See Page v. State*, 657 P.2d 850, 855 (Alaska App.1983).

that were considerably more lenient than the minimum 50–year sentence specified in Felber's plea agreement.

At this point, Judge Volland interrupted the defense attorney's argument to ask what the defense attorney was proposing. The defense attorney replied that Felber wanted the court to rescind the plea agreement:

> *The Court:* I don't know what you're asking me to do, so I guess I need to ask [you] now.

> *Defense Attorney:* I'm asking you to not accept the plea agreement [because the 50–year minimum sentence] is not reasonably proportional [with] the sentencing criteria. I'm asking you to treat this as an open sentencing. I'm asking you to follow what the court of appeals has set down for this sort of offense. And the number I came up with was 20 years to serve, [plus] suspended time on top.

> *The Court:* I thought my option, if I considered ... the proposed sentence [to be] inappropriate under sentencing law, was to simply reject the plea agreement.

> *Defense Attorney:* That is your option. I then went to the next step and said we are—we have already pled to every single count [of] the indictment except for the manslaughter [count]. The manslaughter is a lesser included of the [second-degree] murder. We are perfectly ... willing to plead [guilty] to the manslaughter [as well as the other charges], and [then] treat this as an open sentencing.

After taking a recess to consider this matter, Judge Volland reconvened the court and announced that he had decided to deny Felber's motion for open sentencing. Judge Volland acknowledged that, in this situation, he had the authority to reject the plea agreement if he believed that the agreement called for an excessive sentence. *See* Alaska Criminal Rule 11(e)(3). However, Judge Volland declared that he would not exercise his authority to reject the plea agreement—because he concluded that the 50–year mandatory minimum sentence specified in the plea agreement was within the range of reasonable sentences for Felber's crimes.

Judge Volland then proceeded to analyze Felber's conduct and background in light of the statutory sentencing criteria. At the conclusion of this analysis, Judge Volland sentenced Felber as follows:

For the second-degree murder conviction, Felber received 40 years' imprisonment with 15 years suspended (25 years to serve).

On each of the four counts of first-degree assault, Felber received 15 years' imprisonment, with 5 years of each sentence consecutive to the others (and consecutive to the second-degree murder sentence), and the remainder concurrent. That is, Judge Volland imposed a total of an additional 20 years to serve for the first-degree assault convictions.

On each of the nine counts of third-degree assault (that is, the third-degree assault counts that did not overlap with the first-degree assault counts), Felber received 5 years' imprisonment, with 2 years of each sentence consecutive to the others (and consecutive to Felber's sentences for second-degree murder and first-degree assault), and the remainder concurrent. That is, Judge Volland imposed a total of an additional 18 years to serve for these nine third-degree assault convictions.

Judge Volland sentenced Felber to 1 consecutive year to serve for his vehicle theft conviction, and he sentenced Felber to 2 consecutive years to serve for failing to stop and render aid at the scene of an injury accident.

Felber's sentences for eluding a police officer, for driving under the influence, and for driving while his license was revoked or suspended were imposed completely concurrently with his other sentences, so these sentences did not increase Felber's composite time to serve.

All told, then, Felber received a composite sentence of 66 years to serve—81 years with 15 suspended. In other words, Judge Volland imposed a composite sentence that significantly exceeded the 50–year minimum sentence specified in the plea agreement.

*Whether Felber should have been allowed to withdraw from the plea agreement*

■ On appeal, Felber and the State present various arguments concerning whether

Judge Volland should have allowed Felber to withdraw from the plea agreement. Clearly, Felber's request was somewhat unusual, in that he did not seek to withdraw his *pleas*: Felber was still willing to plead guilty to every count in the indictment. Rather, he sought only to withdraw from the portion of the plea agreement that limited the superior court's sentencing discretion to a range of 50 to 85 years to serve.

In essence, Felber argues that he should have been allowed to withdraw from this provision of the agreement because (to use the terminology of contract law) the consideration he received was invalid—legally insufficient to support a contract.

Ostensibly, both parties to the plea agreement gained something: the State obtained the benefit of a guaranteed minimum sentence of 50 years to serve, while Felber obtained the benefit of limiting his sentence to 85 years to serve in a situation where the composite statutory maximum penalty for his offenses was 246 years.[6]

But Felber argues that, under Alaska sentencing law and the applicable sentencing decisions of this Court, there was no possibility that he would receive a sentence in excess of 85 years—and that, indeed, even a composite sentence of 50 years' imprisonment (the minimum composite sentence allowed under the plea agreement) is "clearly mistaken" when evaluated under the sentencing criteria codified in AS 12.55.005, and assessed against this Court's prior decisions involving defendants sentenced for reckless vehicular homicide.

Thus, Felber not only asserts that his composite sentence of 66 years' imprisonment is clearly mistaken, but he further asserts that, as a matter of law, he should have received a composite sentence of substantially less than 50 years' imprisonment—and, thus, the purported benefit he received under the plea agreement was not a legally valid "consideration".[7]

If Felber had agreed to an unlawfully severe sentence—*i.e.,* a sentence that was clearly mistaken when judged in light of the statutory sentencing criteria—then he may have had a fair and just reason to withdraw from the plea agreement and demand an open sentencing on his guilty pleas. But for the reasons explained here, we conclude that Felber's sentence is not clearly mistaken.

As Felber notes, his sentence of 66 years to serve is substantially more severe than any sentence this Court has previously affirmed for vehicular homicide.

In *Tice v. State,* 199 P.3d 1175, 1178–79 (Alaska App.2008), we affirmed a sentence of 25 years to serve for a third felony offender whose reckless driving caused the death of one of his passengers and caused serious injury to another. In *Foxglove v. State,* 929 P.2d 669, 670–71 (Alaska App.1997), we affirmed a composite sentence of 19 years to serve for a drunk driver convicted of one count of manslaughter and several counts of first-degree assault; Foxglove drove his snow machine into a group of people clustered around a bonfire at a speed of 70 miles per hour. *Id.* at 670. And in *Pusich v. State,* 907 P.2d 29, 38–40 (Alaska App.1995), we upheld a composite sentence of 18 years to serve for a drunk driver convicted of one count of manslaughter (involving three victims) and one count of first-degree assault; Pusich had two prior DUI convictions and numerous traffic violations. *Id.* at 32.

One more pertinent decision is *Powell v. State,* 88 P.3d 532, 539 (Alaska App.2004), where we affirmed a sentence of 26 years to serve in a drunk-driving case that did not

---

6. The maximum penalty for second-degree murder was 99 years' imprisonment; AS 12.55.125(b). The maximum penalty for each of the four counts of first-degree assault was 20 years' imprisonment; AS 12.55.125(c). The maximum penalty for leaving the scene of an injury accident was 10 years' imprisonment; AS 28.35.060(c). The maximum penalty for each of the nine counts of third-degree assault, as well as for the offenses of first-degree vehicle theft and felony eluding a police officer, was 5 years' imprisonment; AS 12.55.125(e). The maximum penalty for misdemeanor driving under the influence, and for driving with a revoked or suspended license, was 1 year's imprisonment; AS 28.35.030(b), AS 28.15.291(a), and AS 12.55.135(a).

7. *See, e.g., Wilcox v. Lexington Eye Institute,* 130 Wash.App. 234, 122 P.3d 729, 732 (2005) ("performance of a pre-existing legal obligation does not constitute valid consideration").

involve a homicide. Powell's most serious offense was first-degree assault, but he was a fourth felony offender with eleven prior convictions for driving under the influence.

▆▆▆ When a defendant challenges their composite sentence as excessive, we evaluate the composite sentence in light of the totality of the defendant's conduct and background.[8] Because the question is whether the defendant's combined sentence is justified in light of the entirety of the defendant's conduct and history, Alaska law does not require that a specific sentence imposed for a particular count or offense be individually justifiable as if that one crime were considered in isolation.[9] The question in the present appeal, then, is whether the totality of Felber's conduct and his background justify a sentence of imprisonment that is 40 years greater than the sentences we have previously affirmed for offenders convicted of killing and seriously injuring other people with their motor vehicles.

We begin by noting that the conduct underlying Felber's act of second-degree murder was among the most serious within the definition of that crime. Felber was not merely driving recklessly, heedless of the danger that his driving posed to others. Instead, beginning from the time when the police stopped Felber on Northern Lights Boulevard and boxed him in, Felber consciously used his vehicle as a weapon.

In his effort to escape from the police, Felber drove the stolen truck at the police cars and the police officers surrounding him. He then turned north onto Lake Otis Parkway and consciously rammed Stephen Strain's Chevrolet because it was in his way. According to the evidence, Felber did not attempt to slow down even after colliding with Strain's vehicle; instead, he kept the accelerator pedal floored and tried to push the Chevrolet out of his path, until he realized that his stolen truck was hopelessly entangled with the Chevrolet—at which point, Felber fled.

Felber's conduct demonstrates a level of blameworthiness far exceeding the conduct of the defendants in our other vehicular homicide decisions. Even if Felber was not consciously trying to kill the police officers and civilians in his path, he consciously and callously placed them in great peril—almost as if he had used a firearm and had repeatedly fired random shots at a crowd.

The only prior case with arguably similar facts is *Foxglove*, where the defendant knowingly drove his snow machine into a group of people standing around a bonfire. But even in *Foxglove*, the defendant engaged in only one such reckless act. Here, Felber repeatedly rammed his stolen truck into other vehicles and drove the truck toward the police officers who were attempting to apprehend him.

As we explained earlier, Judge Volland sentenced Felber to serve 25 years for the offense of second-degree murder—a sentence in the middle of the 20– to 30–year *Page* benchmark range for first felony offenders who engage in conduct that is typical for second-degree murder. But Felber was a third felony offender, and his conduct was far from typical within the range of conduct encompassed by the second-degree murder statute. We conclude that the circumstances of Felber's case would support a sentence substantially more severe than the *Page* benchmark range.

Felber was also convicted of four counts of first-degree assault, for causing serious injury to the drivers of four other vehicles. Because Felber was a third felony offender, he faced a presumptive sentencing range of 15 to 20 years' imprisonment for each of these four offenses. Judge Volland sentenced Felber to a total of 20 years to serve for all four of these first-degree assault counts. In other words, Felber received a composite sentence for his four first-degree assault convictions that was within the normal sentencing range for a third felony offender convicted of a single count of first-degree assault.

---

8. *See, e.g., Hunter v. State,* 182 P.3d 1146, 1155 (Alaska App.2008); *Brown v. State,* 12 P.3d 201, 210 (Alaska App.2000); *Comegys v. State,* 747 P.2d 554, 558–59 (Alaska App.1987).

9. *See, e.g., Waters v. State,* 483 P.2d 199, 202 (Alaska 1971); *Jones v. State,* 765 P.2d 107, 109 (Alaska App.1988); *Comegys v. State,* 747 P.2d 554, 558–59 (Alaska App.1987).

The foregoing discussion does not yet take account of Felber's other offenses: his nine counts of third-degree assault (for placing four police officers and five civilians in danger of imminent serious physical injury), plus his other crimes of vehicle theft, driving under the influence, driving with his license revoked or suspended, eluding a police officer, and leaving the scene of an injury accident.

Along with the totality of Felber's conduct in the present case, we must consider his criminal record—which began when he was a juvenile. The fact that Felber had two prior felony convictions has already been factored into our analysis. However, the salient factor in Felber's past criminal record is the fact that he has twice previously engaged in vehicle theft and wantonly dangerous driving.

Given the totality of Felber's conduct in this case, and given his background, we conclude that a sentence of 66 years to serve is not clearly mistaken. That is, the 66–year sentence is justifiable under the facts of Felber's case when those facts are assessed under the sentencing criteria codified in AS 12.55.005 and under this Court's prior sentencing decisions.

*Conclusion*

For the reasons explained here, we uphold Judge Volland's decision that Felber did not present adequate grounds for withdrawing from the plea agreement, and we further uphold Felber's composite sentence of 66 years to serve.

The judgement of the superior court is AFFIRMED.