Roy Charles WALTON, Appellant,

v.

STATE of Alaska, Appellee.

No. 2736.

Supreme Court of Alaska.

Sept. 9, 1977.

Barbara J. Miracle, Asst. Public Defender, and Brian C. Shortell, Public Defender, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., and Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

This is a sentence appeal. The appellant, Roy Charles Walton, complains of the severity of a seven and one-half year sentence for assault with a dangerous weapon and a one year sentence for escape. The sentences, which are to be served consecutively, were imposed by the superior court on October 22, 1975.[1]

The facts in this case are briefly as follows: on the morning of June 3, 1975, a fight took place between the defendant and one Evan Wasky at the Rescue Mission in Anchorage. At that time Walton warned Wasky that he would come back for him. That night, at about midnight, Wasky and some companions were walking down 4th Avenue in Anchorage when the defendant approached Wasky and stabbed him in the abdomen. The victim was taken to a hospital and shortly afterward Walton was identified by one of Wasky's companions and taken into police custody.[2] The defendant was heavily intoxicated at that time. In a statement to the police Walton stated that he had stabbed Wasky because of their altercation that morning and his promise to Wasky that he would be back for him.

Walton was indicted by a grand jury for assault with a dangerous weapon, AS 11.15.220.[3] While awaiting trial on the assault charge, Walton was granted work release status, a condition of which was that he return to jail at 5:30 p. m. each night. On July 14, 1975, as the defendant was returning from work, he met a friend who offered him a drink. This led to a one and one-half month drinking episode which ended when he was reapprehended. He was then charged with escape under AS 11.30.090 and AS 33.30.250(f).[4]

Following a jury trial on the charge of assault with a dangerous weapon, Walton was found guilty on September 17, 1975. On October 22, 1975, he pled guilty to the escape charge. At that time he was sen-

---

1. A timely notice of appeal was filed on November 24, 1975. The appeal was subsequently dismissed when appellant's appointed counsel failed to file a brief on his behalf. Upon a showing of good cause, the appeal was ordered reinstated on January 18, 1977.

2. The victim Wasky was highly intoxicated at the time of this incident and he did not himself immediately realize that he had been stabbed. He did not appear at Walton's trial on the assault charge, and thus the full extent of the injury he suffered was not known at the time of sentencing.

3. At the time of the assault, AS 11.15.220 provided:

   *Assault with a dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

4. At the time the defendant escaped, AS 11.30.090 stated in pertinent part:

   *Escape from custody or confinement.* A person who escapes or attempts to escape from the custody of a peace officer under a lawful arrest or from a jail or institution in which he is detained by a peace officer or confined by direction of a court in this state or from custody under process issued by a court in this state is punishable,

   (1) if the custody or confinement is by an arrest on a charge of a felony, or conviction of a felony, by a fine of not more than $5,000, or by imprisonment for not less than one year nor more than three years, or by both;

   At that time, AS 33.30.250(f) stated:

   The wilful failure of a prisoner to return to the place of confinement not later than the expiration of any period during which he is authorized to be away from the place of confinement under this section, is an escape from the place of confinement and is punishable under the laws relating to escape.

tenced to seven and one-half years for assault with a dangerous weapon and one year for escape. The court ordered that the sentences be served consecutively.

Walton challenges the lower court's imposition of a seven and one-half year sentence for assault with a dangerous weapon on two grounds. First, he argues that a remand to the sentencing court is required because that court had before it insufficient medical and psychological data on which to base its sentence. Second, he contends that the trial court was clearly mistaken in imposing the sentence it did. We will discuss defendant's second contention first.

Under State v. Chaney, 477 P.2d 441 (Alaska 1970), this court's duty in sentence appeals is to review sentences "in light of the nature of the crime, the defendant's character, and the need for protecting the public." Id. at 443. We are obliged to make our own examination of the record and will modify a sentence only "if we are convinced that the trial court was clearly mistaken in imposing the sanction it did." Id. at 444.

In the instant case, the crime itself was a serious one. This court has repeatedly held that assault with a dangerous weapon is among the most serious crimes. Dawson v. State, 557 P.2d 142 (Alaska 1976); State v. Armantrout, 483 P.2d 696, 698 (Alaska 1971). Moreover, Walton did not assault his victim on an impulse; he told Evan Wasky that he was going to get him and, some hours later, sought Wasky out and stabbed him as promised. Although the defendant was intoxicated at the time, he nonetheless was able to plan and successfully execute his crime.

Roy Walton was born on September 22, 1952, in Kivalena, Alaska, and was raised by his grandparents who are ministers for the Friends Church. He lived in a number of villages in the Kotzebue area until he was sent to school in Wrangell, Alaska, and in Oregon. He quit high school at age 15, feeling bored and isolated from his family and people, and between that time and his conviction, he held a variety of short term jobs around the state, the longest being an eleven month stint as a "tire buster" in Anchorage. He also was in the Army National Guard from June, 1971, until January, 1974, at which time he was ordered to involuntary active duty because of repeated failures to report for National Guard duty; he has never reported for such active duty.

Although, as the presentence report indicates, Walton is hard working, cooperative and fairly responsible when sober, he suffers from severe alcoholism, and it was while intoxicated that he committed this and several other lesser offenses. Walton would drink heavily for extended periods of time, at times combining this with the use of drugs, and he regularly experienced loss of memory when drinking. His memory losses sometimes lasted as long as a week. On occasion he experienced hallucinations as a result of excessive alcohol. In addition, there is evidence that he may suffer from organic brain damage or at least acute brain syndrome from his drug and alcohol abuse. Whatever the extent of damage wrought by this abuse, it is clear that the defendant often would drink to the point where he lost control over his actions.

In imposing its sentence, the lower court gave great weight to the fact that the defendant lay in wait to do serious injury to his victim. The court felt that this was the worst type of offense and that Walton thus had to be isolated from society for a long period of time. In addition, the court stated that it had imposed a lengthy sentence in order that the defendant be impressed with the extent of his antisocial behavior and thus be deterred from continuing such behavior upon release. The court further recommended that Walton be given treatment for his problems with alcohol, in the interest of helping to effectuate rehabilitation during his incarceration.

In State v. Chaney, supra, we enunciated the proper goals of sentencing.[5]

5. The proper goals of sentencing as set out by this court in State v. Chaney, 477 P.2d 441, 444 (Alaska 1970) are: (i) rehabilitation of the offender into a noncriminal member of society;

After setting out these goals we added that "[d]etermination of an appropriate sentence involves the judicious balancing of many and ofttimes competing factors . . . [of which] primacy cannot be ascribed to any particular factor." 477 P.2d at 444. Our examination of the record in this case indicates that the trial court considered the proper goals in arriving at its sentence and balanced them as it saw fit. Although we might not have imposed the same sentence in this case, we cannot say that the sentencing court was clearly mistaken in imposing the sentence it did.

As stated above, Walton also argues that the sentencing court had insufficient medical and psychological data before it at the time of sentencing, and that we should thus remand to that court for further evaluation of the defendant and a new sentencing. In support of this contention, the defendant points out that the trial court was not furnished with a current psychiatric or medical evaluation despite clear evidence that the defendant suffered from severe alcoholism, possibly to the point of organic brain damage. The only such evaluations before the lower court were excerpts in the presentence report of a doctor's diagnosis and a psychologist's evaluation made during a prior hospitalization of the defendant a year and a half earlier.

■ In reviewing a criminal sentence, part of our obligation is to consider the sufficiency and accuracy of the information upon which the sentence is based. *State v. Chaney, supra,* at 443. In other opinions, we have emphasized the need for adequate medical and psychiatric data in sentencing proceedings and have on several occasions remanded to the sentencing court for further psychiatric evaluation of the defendant and reconsideration of the sentence. *Andrews v. State,* 552 P.2d 150, 154 (Alaska 1976); *Tommy v. State,* 551 P.2d 179, 180 (Alaska 1976); *Davenport v. State,* 543 P.2d

1204, 1211 (Alaska 1975); *Hawthorne v. State,* 501 P.2d 155, 158 (Alaska 1972); *Robinson v. State,* 484 P.2d 686, 689–90 (Alaska 1971).

■ However, while this court has recognized the importance of psychological and psychiatric data as an aid in arriving at sentences which further the goals of penal administration, we have also held that such evaluations are not indispensable or necessary in every case, and that the absence of a psychiatric evaluation does not necessarily require us to set aside a sentence. *Adams v. State,* 521 P.2d 516, 518–19 (Alaska 1974); *Newsom v. State,* 512 P.2d 557, 562–63 (Alaska 1973). Thus, where the sentencing court is fully aware of the defendant's personal and psychological background and takes these factors into account in arriving at a sentence which comports with the proper goals of sentencing, this court need not remand for the purpose of obtaining a current psychological evaluation of the defendant. *Id.*

In his brief, defendant particularly relies on this court's statements in *Tommy, supra,* and *Robinson, supra.* Both cases, however, are distinguishable from the instant case. In *Tommy,* the defendant was sentenced to two concurrent ten-year terms of imprisonment after he pleaded guilty to two counts of larceny. In imposing its sentence, the trial court, without the benefit of a current psychological evaluation, found rehabilitation therapy inappropriate, despite evidence that the defendant suffered from alcohol addiction. This court remanded the case to the superior court with directions that a thorough psychological evaluation be performed on Tommy and that the lower court then reconsider its sentence. Here, the trial judge fully recognized Walton had an alcohol problem, even without current psychological information, and he recommended in his sentence that Walton be given alcohol rehabilitation therapy.

(ii) isolation of the offender from society to prevent criminal conduct during the period of confinement; (iii) deterrence of the offender himself after his release from confinement or other penological treatment; (iv) deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender; and (v) community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

In *Robinson,* a nineteen year old defendant was convicted of robbery and using or carrying a firearm during the commission of a robbery. He was sentenced to fifteen years for the robbery conviction and ten years for the firearm conviction, the two sentences to run concurrently, with the entire sentence to run consecutively to a seven year sentence he had previously received for separate crimes of armed robbery and attempted robbery. In imposing its sentence, the trial court had made clear that it believed that Robinson was beyond the reach of any rehabilitative efforts despite the fact that no psychological or psychiatric studies of the defendant were furnished to the judge prior to sentencing. In remanding the case, this court stated that, considering the youth of the defendant and the length of the sentence, it was imperative that the trial judge be furnished with a psychological evaluation of the defendant before imposing sentence.

In the instant case, while the defendant was not that much older than Robinson at the time of his sentencing, the sentence itself is significantly shorter. More importantly, the trial judge here did not show the same lack of faith in the possibility of rehabilitating the defendant as did the judge in *Robinson,* for in imposing sentence the trial judge recommended that Walton be given alcohol rehabilitation therapy. *Robinson,* therefore, does not dictate that we remand to the trial court for a current psychiatric evaluation of Walton.

■ Even more important, however, than the defendant's failure to show that his situation is similar to that of the defendants in *Tommy* and *Robinson,* is his failure to show what further psychological evaluation might add to the case. In other cases where we have remanded for further evaluation, there was either no psychological evaluation before the sentencing court [6] or only a cryptic, unexplained reference in the presentence report to one previously done.[7] In those cases there was therefore a strong possibility that the trial court might have arrived at a different sentence had it had some psychological data before it. Here, it has been clear from the start that the defendant suffers from acute alcoholism, that he may suffer from organic brain damage or acute brain syndrome as a result, and that it is this problem which is the source of most of his difficulties. While the psychological data before the trial court may have been somewhat dated and brief, it nonetheless clearly brought to the court's attention the same psychological problems which the defendant now claims need further evaluation. The trial judge clearly gave great weight to the psychological and medical data before him. Thus, while it is true that the trial court did not have the most current psychological data available on which to base its sentence, we cannot say that a remand for further evaluation is required here, since the very problem which the defendant claims needs further evaluation was fully considered by the trial court and was taken into account in formulating its sentence. *See Adams v. State, supra; Newsom v. State, supra.*

Walton's final contention is that the trial court was clearly mistaken in making its one year sentence for escape consecutive to the sentence for assault with a dangerous weapon. He argues that his escape was simply a symptom of his alcoholism and that under AS 47.37.010 [8] and *Peter v. State,* 531 P.2d 1263 (Alaska 1975), the policy of this state is to treat alcoholism as a disease and not a crime. Thus he maintains

---

6. *Andrews v. State,* 552 P.2d 150, 154 (Alaska 1976); *Davenport v. State,* 543 P.2d 1204, 1211 (Alaska 1975). In addition, it should be noted that there were other grounds for remand in these cases beside the insufficiency of the psychological data before the trial court.

7. *Hawthorne v. State,* 501 P.2d 155, 158 (Alaska 1972).

8. AS 47.37.010, which is part of the Uniform Alcoholism and Intoxication Act, provides:

   *Declaration of policy.* It is the policy of the state that alcoholics and intoxicated persons should not be criminally prosecuted for their consumption of alcoholic beverages and that they should be afforded a continuum of treatment so they may lead normal lives as productive members of society.

**986**

no further sentence for his escape should have been imposed, arguing:

> Defendant is not seeking to have a separate criminal offense abrogated with the excuse he was drunk, but simply claims that further punishment for symptoms inherently related to his disease of alcoholism was against the policy of this state as contained in AS 47.37.

■ Walton's reliance on AS 47.37, the Uniform Alcoholism and Intoxication Act, is misplaced, for as we said in *Peter v. State, supra* at 1271, that Act "does not make drunkenness a defense to criminal liability for non-alcoholic substantive offenses committed by one under the influence of liquor." [9] Walton, in his brief, concedes as much, but nonetheless argues that the sentences should not have been consecutive.

■ Given the goals of sentencing, as set forth earlier in this opinion,[10] we believe that the use of consecutive sentences is particularly appropriate in cases such as this, i. e., where one escapes while incarcerated on another charge. Those goals would be largely frustrated if no real or effective additional sanction or detriment flowed from the conviction for escape.[11] Thus, we are unable to accept Walton's argument that the trial judge was clearly mistaken in requiring that the sentences be served consecutively.

AFFIRMED.

---

9.  *See also Alex v. State,* 484 P.2d 677 (Alaska 1971); *McIntyre v. State,* 379 P.2d 615 (Alaska 1963); AS 11.70.030.

10. *See* note 5, *supra.*

11. *See State v. Wortham,* 537 P.2d 1117 (Alaska 1975).